United States District Court
Southern District of Texas
**ENTERED**
July 15, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMMANUEL AGYEI, | § § | |
| *Plaintiff,* | § § § | CIVIL ACTION NO. 4:15-CV-1389 |
| v. | § § | |
| ENDURANCE POWER PRODUCTS, INC. and UTP ENGINE, INC., | § § § § | |
| *Defendants.* | § § § | |

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' JOINT MOTION TO DISMISS

On June 8, 2016, United States District Judge Keith P. Ellison referred all nondispositive and dispositive matters in this case pursuant to 28 U.S.C. § 636(b)(1)(A)–(B). [Doc. No. 26.] Now before the Court is Defendants' joint motion seeking to dismiss Plaintiff's Amended Complaint, to dismiss Defendant UTP Engine, Inc. from this case, and to have the Court retain jurisdiction. [Doc. No. 32.] Plaintiff has filed a response opposing Defendants' motion and requesting that the Court remand this matter to Texas state court. [Doc. No. 33.] For the following reasons, the Court **RECOMMENDS** that Defendants' joint motion be **DENIED** and that the case be **REMANDED** to the 268th Judicial District Court of Fort Bend County, Texas.

### BACKGROUND

Plaintiff, a Texas citizen, originally filed this suit on April 15, 2015 in Texas state court. The original petition named Endurance Power Products, Inc. ("Endurance"), a Delaware corporation with a principal place of business in Nebraska, as the sole defendant and asserted claims against it under the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE ANN. § 17.41 *et seq.*, and common-law fraud. (Orig. Pet. ¶¶ 13–19 [Doc. No. 1-4].) On

1

May 22, 2015, Endurance removed the suit to federal court on the basis of diversity. (Not. of Removal ¶¶ 5, 8–13 [Doc. No. 1].) Six days later, on May 28, 2015, Endurance filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. No. 5.]

On July 10, 2015, Plaintiff filed an Amended Complaint joining UTP Engine, Inc. ("UTP") as a defendant. (Am. Compl. ¶ 3 [Doc. No. 12].) The amended complaint alleges that UTP sold a defective connecting rod, which Endurance produced, that was installed in Plaintiff's truck. (*Id.* ¶ 5.) Plaintiff further alleges that the defective connecting rod caused his truck to break down in the middle of a freeway in Louisiana and that the truck had to be towed to Houston for repair. (*Id.*) Plaintiff asserts strict liability and common-law fraud claims against both Defendants, a negligence claim against Endurance, and a DTPA claim against UTP. (*Id.* ¶¶ 6–24.)

On July 13, 2015, Judge Ellison held a hearing on Endurance's motion to dismiss, denying that motion as moot in light of Plaintiff's amended complaint. In April and May of 2016, Defendants each filed a motion for summary judgment. [Doc. Nos. 21, 22.] While those motions were pending, it came to the Court's attention that UTP is a Texas corporation.[1] At a hearing held before Judge Ellison on June 23, 2016, the parties acknowledged that UTP is a Texas citizen for diversity purposes.

## ANALYSIS

**A. Legal Standard Governing Joinder of a Nondiverse Defendant After Removal**

Federal district courts have diversity jurisdiction over "civil actions where the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens

---

[1] Online records from the Texas Secretary of State show that UTP is a Texas corporation. *See Swindol v. Aurora Flight Sci. Corp.*, 805 F.3d 516, 518–19 & n.2 (5th Cir. 2015) (taking judicial notice of online state agency records). For purposes of diversity jurisdiction, a corporation is a citizen of the state in which it was incorporated and the state in which it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1); *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, LLC*, 757 F.3d 481, 483 (5th Cir. 2014).

of different States." 28 U.S.C. § 1332(a)(1).[2] The diversity statute has long been interpreted to mandate a rule of "complete diversity," meaning that it "applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).

Because both UTP and Plaintiff are Texas citizens, UTP's joinder, if permitted,[3] would destroy complete diversity—and thus diversity jurisdiction—in this case. *See Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987) ("[a]lthough it is true that most subsequent events will not defeat jurisdiction, addition of a nondiverse defendant will"); *Rouf v. Cricket Commc'ns, Inc.*, No. H-13-2778, 2013 WL 6079255, at *2 (S.D. Tex. Nov. 19, 2013) (Miller, J.) ("An amendment to the complaint that adds a non-diverse party after removal will defeat jurisdiction,

---

[2] "Where the plaintiff has alleged a sum certain that exceeds the requisite amount in controversy, that amount controls if made in good faith." *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). Nonetheless, the Court notes its doubts, given the nature of Plaintiff's claims, that "the amount in controversy exceeds $75,000." (Am. Compl. ¶ 4.)

[3] Plaintiff filed his amended complaint without leave of court, and the Defendants did not object. The Court has only recently become aware of the jurisdictional issues. In these circumstances, the court may review the amendment. *See Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999) ("[A] district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court."); *Ascension Enters., Inc. v. Allied Signal, Inc.*, 969 F. Supp. 359, 360 (M.D. La. 1997) (court has authority under § 1447(e) to reject Rule 15(a) amendment that, post-removal and without leave of court, seeks to add nondiverse defendant); *Whitworth v. TNT Bestway Transp. Inc.*, 914 F. Supp. 1434, 1435 (E.D. Tex. 1996) ("Any amendment, including one sought under Rule 15(a), must be preceded by leave of court if it will divest the court of jurisdiction. 28 U.S.C. § 1447(e)."); *see also Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987) (vacating order permitting amendment because plaintiff joined nondiverse party "as a routine matter" post-removal); *cf. Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761–62 (7th Cir. 2009) ("when a district court is unaware that joinder will destroy diversity, it may reconsider its prior decision permitting leave to amend a complaint"); *Williams v. Vincent Int'l, Inc.*, 192 F.R.D. 544, 547 (S.D. Miss. 2000) (reversing magistrate judge's order permitting joinder of nondiverse parties where the magistrate judge did not consider the jurisdictional issue, and plaintiff did not follow the typical procedure of coupling a motion for remand with its motion to amend and filing both with the district court).

and the court must remand.").[4] When a plaintiff seeks to join a nondiverse defendant after the case has been removed, the district court's analysis begins with 28 U.S.C. § 1447(e), which states:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

These are the district court's *only* options; "the court may not permit joinder of non-diverse defendants but then decline to remand." *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999); *accord Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 477 (5th Cir. 2001) (statute "direct[s] remand if the district court permits joinder of a defendant whose citizenship destroys subject matter jurisdiction"); *Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 759 (7th Cir. 2009) ("These are the only options; the district court may not permit joinder of a nondiverse defendant *and* retain jurisdiction." (footnote omitted)); *Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307 (8th Cir. 2009) (same).

---

[4] There is some contrary caselaw. In *Richey v. Wal-Mart Stores*, 390 F. App'x 375 (5th Cir. 2010) (unpublished decision), the Fifth Circuit held that where complete diversity existed at the time of removal, "subsequently added defendants cannot divest the district court of the original jurisdiction it had at the time of removal." *Id.* at 376–77. The Tenth Circuit reached a similar result in *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484 (10th Cir. 1991), rejecting what it described as the "assumption that a party may force remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action." *Id.* at 1488. Neither *Richey*, as an unpublished decision, *see* 5TH CIR. R. 47.5.4; *Bartolome v. United States*, No. H-04-3898, 2006 WL 2247326, at *2 n.1 (S.D. Tex. Aug. 4, 2006) (Ellison, J.), nor *Pfeiffer*, as an out-of-circuit decision, is binding precedent. Nor is either persuasive. *Richey* directly contravenes, and fails to discuss, *Hensgens* and other established Fifth Circuit precedent. In addition, neither *Richey* nor *Pfeiffer* discusses 28 U.S.C. § 1447(e). The courts in both cases appeared concerned that a different outcome would grant parties the unilateral power to destroy subject matter jurisdiction. *See Richey*, 390 F. App'x at 378 n.2 ("[Plaintiff] cites to no authority, and we know of none, that permits *a plaintiff to destroy* complete diversity by adding a non-diverse defendant after the time of removal."); *Pfeiffer*, 929 F.2d at 1488 (rejecting "assumption that *a party may force* remand of an action after its removal from state court by amending the complaint to destroy the federal court's jurisdiction over the action" (emphasis added)). However, as elaborated upon below, § 1447(e) gives district courts—not litigants—the discretion to either permit or deny joinder of the nondiverse defendant. *Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677 (5th Cir. 1999); *Mayes*, 198 F.3d at 462 ("Under Section 1447(e), the actual decision on whether or not to permit joinder of a defendant under these circumstances is committed to the sound discretion of the district court . . . .").

The decision between these two options lies within the court's sound discretion. *Hensgens*, 833 F.2d at 1182; *see also Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005). In exercising that discretion, the court must balance "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources" against the diverse defendant's "interest in retaining the federal forum." *Hensgens*, 833 F.2d at 1182. In *Hensgens*, the Fifth Circuit identified four factors to consider in weighing these competing interests: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in asking for the amendment; (3) whether the plaintiff will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities. *Id.*; *Hawthorne*, 431 F.3d at 227; *see also Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 & n.11 (5th Cir. 1991).

## B. Application of the *Hensgens* Factors Require the Court to Permit the Amended Complaint and Remand

### 1. Factor 1: The primary purpose of Plaintiff's amendment was not to defeat diversity jurisdiction.

In analyzing the first *Hensgens* factor, courts take into account considerations such as whether the plaintiff knew or should have known the identity of the nondiverse defendant when the state court suit was filed, whether the plaintiff states a valid claim against the nondiverse defendant, and the timing of the amendment. *Richardson v. Wal-Mart Stores Texas, LLC*, No. H-15-3167, 2016 WL 3346542, at *5 (S.D. Tex. June 16, 2016) (Miller, J.); *Gallegos v. Safeco Ins. Co. of Ind.*, No. 09-CV-2777, 2009 WL 4730570, at *3–4 (S.D. Tex. Dec. 7, 2009) (Rosenthal, J.).

### a. It is unclear whether Plaintiff knew of UTP's identity as an appropriate defendant when he initiated his state court suit.

Plaintiff's original petition alleged that Endurance sold the defective connecting rod. (Orig. Pet. ¶ 11.) Only in his amended complaint (filed after removal) did Plaintiff allege Endurance to be the manufacturer and UTP the seller. (Am. Compl. ¶ 5.) Moreover, in filing his amended complaint, Plaintiff did not simply add UTP as a defendant; he substantively revised his claims against each defendant as well. This suggests Plaintiff may not have learned of UTP's identity or involvement as the seller until after filing the state court suit. *See Gallegos*, 2009 WL 4730570, at *4 (plaintiff "did not add any allegations" against nondiverse individual and "the only substantive changes in the proposed amended pleading are to add [him] as a defendant and to change the references to the 'defendant' to the 'defendants'"). In his amended complaint, Plaintiff alleges that he notified *both* Endurance and UTP of his complaint "by letter dated December 29, 2014." (Am. Compl. ¶ 20.) Plaintiff did not attach a copy of that letter to his complaint, but Endurance provided a copy of it in support of its now-moot motion to dismiss [Doc. No. 5-2]. The letter makes no mention of UTP and thus does not establish that Plaintiff was aware of UTP's involvement at the time. *See Gallegos*, 2009 WL 4730570, at *3 (record contained letters, dated several months prior to plaintiff's filing of state court suit, bearing nondiverse defendant's name and contact information).

In sum, the Court cannot say that Plaintiff knew or should have known of UTP's involvement when he initiated this suit. *See Irigoyen v. State Farm Lloyds*, No. CA-C-03-324-H, 2004 WL 398553, at *3 (S.D. Tex. Jan. 5, 2004) (Hudspeth, J.) (denying amendment to add two nondiverse defendants where the plaintiffs "admittedly knew" of them before filing suit); *Tomlinson v. Allstate Indem. Co.*, No. 06-0617, 2006 WL 1331541, at *3 (E.D. La. May 12, 2006) (concluding that "plaintiffs were well aware not only of [nondiverse defendant's] identity

but also her actions before the state court complaint was filed"). This consideration weighs in favor of permitting UTP's joinder.

### b. Plaintiff has asserted a valid claim against UTP.

#### i. Standard for discerning a "valid claim" under *Hensgens*

Courts recognize that "when a plaintiff states a valid claim against a defendant, it is unlikely that the *primary* purpose of bringing those defendants into a litigation is to destroy diversity jurisdiction." *Lowe v. Singh*, No. H-10-1811, 2010 WL 3359525, at *2 (S.D. Tex. Aug. 23, 2010) (Werlein, J.) (emphasis in original) (quoting *Schindler v. Charles Schwab & Co., Inc.*, No. 05-0082, 2005 WL 1155862, at *3 (E.D. La. May 12, 2006)) (internal quotation marks omitted). In determining whether a plaintiff has stated a "valid claim" under the first *Hensgens* factor, courts ask whether the plaintiff's cause of action is "facially valid" or "valid as a matter of law." *See Herzog v. Johns Manville Products Corp.*, No. 02-1110, 2002 WL 31556352, at *3 (E.D. La. Nov. 15, 2002) (finding that plaintiffs stated "facially valid" claims against the two defendants that they sought to add to the suit); *Mallery v. Becker*, No. 13-CV-2790, 2014 WL 60327, at *2 (W.D. La. Jan. 7, 2014) (finding that proposed claims stated a valid cause of action because defendants "have not argued that the claims sought to be added by the proposed amendment cannot be valid, as a matter of law, on the facts at issue"). A plaintiff's claim is likely not valid if it "face[s] significant legal obstacles." *Gallegos*, 2009 WL 4730570, at *4 (plaintiff seeking to impose liability on an insurance adjuster under Texas law "face[d] significant legal obstacles" because he failed to allege that the adjuster exceeded his authority or made actionable misrepresentations).

Defendants urge the Court to apply an improper-joinder analysis to determine whether Plaintiff has asserted a valid claim against UTP. (Jt. Mot. at 6.) The Fifth Circuit has stated that

7

the improper-joinder doctrine "does not apply to joinders that occur *after* an action is removed." *Cobb*, 186 F.3d at 677 (emphasis in original). Rather, "that doctrine applies only to the assessment of whether a party sued in state court *before* the removal may be ignored for diversity purposes. When a plaintiff proposes to add a diversity-destroying defendant *after* the case is removed, the court's decision of the issue is guided by the factors set forth in *Hensgens*[.]" *Bullock v. Smith*, No. 08-CV-1333, 2008 WL 4853355, at *3 (W.D. La. Nov. 7, 2008) (citing *Cobb*, 186 F.3d at 677–79). Defendants cite the Fourth Circuit's decision in *Mayes v. Rapoport*, which held that although the improper-joinder doctrine "does not directly apply after removal because the district court already possesses jurisdiction . . . if the defendants can carry the heavy burden of proving fraudulent [i.e., improper] joinder, that fact should be a factor—and perhaps the dispositive factor—that the court considers in deciding whether a plaintiff may join a nondiverse defendant." 198 F.3d at 463; *accord Galindo v. Am. Home Products*, No. H-03-5520, 2004 WL 6340617, at *4–6 & n.21 (S.D. Tex. Feb. 10, 2004) (Lake, J.) (stating that "[t]he first *Hensgens* factor is the vehicle for applying the fraudulent joinder doctrine to non-diverse defendants joined after removal" and citing *Mayes*).

The Court will follow the Fifth Circuit's clear instruction that an improper-joinder analysis does not apply in cases involving post-removal joinder. As a practical matter, though, this distinction is unimportant. Like the "facially valid" standard used under the *Hensgens* analysis, the improper-joinder analysis used in *Mayes* is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under [Federal Rule of Civil Procedure] 12(b)(6)." *Mayes*, 198 F.3d at 464 (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)) (internal quotation marks omitted); *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("[T]he inquiry into the validity of a complaint triggered by a motion to

8

dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.").

Plaintiff asserts claims against UTP based on the DTPA, common-law fraud, and strict liability. Because Plaintiffs' DTPA and common-law fraud claims are valid on their face, the Court need not examine the strict liability claim.

### ii. Plaintiff's DTPA claim is facially valid.

The DTPA provides, in relevant part, that a consumer may maintain an action where "any unconscionable action or course of action by any person" constitutes "a producing cause of economic damages or damages for mental anguish." TEX. BUS. & COM. CODE ANN. § 17.50(a)(3); *see also Brown v. Bank of Galveston, Nat. Ass'n*, 963 S.W.2d 511, 513 (Tex. 1998) (to maintain a DTPA cause of action, plaintiff must show that (1) he is a consumer under the DTPA with respect to his claim, (2) the defendant committed a false, misleading, or deceptive act under section 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action, and (3) these acts were the producing cause of the plaintiff's actual damages), *abrogated on other grounds by Ford Motor Co. v. Ledesma*, 242 S.W.3d 32 (Tex. 2007). An "unconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE ANN. § 17.45. Here, Plaintiff has alleged the following with respect to his DTPA claim against UTP:

> 5. Defendant, UTP sold a defective "connecting rod DET 60 12.7L DDEC IV closed end with oil passage," produced by Defendant, Endurance, product code number 123526078

9

that was installed in Plaintiff's truck. The subject defective product caused Plaintiff's truck to break down in the middle of a freeway in the State of Louisiana and had to be towed to Houston, Texas for repair. Plaintiff incurred out-of-pocket expenses and loss of income because of this incident.

* * *

18. Unconscionable Action or Course of Action. UTP engaged in an "unconscionable action or course of action" to the detriment of Plaintiff as that term is defined by Section 17.45(5) of the Texas Business and Commerce Code, by taking advantage of the lack of knowledge, ability, experience, or capacity of Plaintiff to a grossly unfair degree.

19. Producing Cause. Plaintiff would show that the acts, practices and/or omissions complained of herein were the producing cause of Plaintiff's damages more fully described herein below.

(Am. Compl. ¶¶ 5, 18–19.)

In arguing that Plaintiff has not stated a valid claim against UTP, Defendants cite § 82.003(a) of the Texas Civil Practice & Remedies Code.[5] That provision states that "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves" the applicability of one of seven specifically enumerated exceptions. TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(1)–(7); *see also Alonso v. Maytag Corp.*, 356 F. Supp. 2d 757, 761 (S.D. Tex. 2005) (Hittner, J.) ("[i]n essence, § 82.003 denies, under the umbrella of products liability, recovery from a product seller who merely distributed a defective product" unless one of the seven exceptions applies). Defendants argue that Plaintiff has "not presented any evidence that these exceptions apply to UTP." (Jt. Mot. at 8.)

Defendants' invocation of § 82.003 is insufficient to show that Plaintiff's DTPA claim is invalid. "The few federal court cases involving cases removed under [§ 82.003] have remanded

---

[5] As part of their improper-joinder argument, Defendants assert that Plaintiff plead fraudulent jurisdictional facts in his amended complaint when he claimed the Court had diversity jurisdiction. (Jt. Mot. at 6–7.) Because the Court is not applying the improper-joinder doctrine, it need not pass on that argument. In any event, this consideration would weigh in favor of permitting UTP's joinder because it undermines the notion that Plaintiff sought to join UTP in order to *destroy* diversity jurisdiction.

based on Deceptive Trade Practices Act claims asserted in the plaintiff's state court petition." *Daimlerchrysler Corp.*, No. H044021, 2005 WL 1214605, at *4 (S.D. Tex. May 20, 2005) (Rosenthal, J.) (collecting cases). For example, in *Alonso v. Maytag Corp.* (an improper joinder case) the court held that the representatives of a decedent's estate had "no reasonable possibility" of establishing their strict liability and negligence claims against nondiverse distributors who "merely distributed" a defective stove because they "failed to allege any facts establishing [d]efendants' liability under any of the seven exceptions [in § 82.003(a)]." 356 F. Supp. 2d at 761. However, the court also held that because the plaintiffs' complaint properly alleged the necessary elements to establish a DTPA claim, the defendants had failed to prove that the non-diverse defendants had been improperly joined. *Id.* at 762. It therefore remanded the case to state court. *Id.*; *see also Skinner v. Cooper Tire & Rubber Co.*, No. 3:04-CV-0653-D, 2004 WL 1171201, at *2 & n.3 (N.D. Tex. May 26, 2004) (remanding on basis of plaintiff's DTPA claim and noting that defendant did not argue that a DTPA claim was unavailable but instead merely contested whether warranty was "sufficient to establish liability under § 82.003").

Here, Plaintiff has alleged the elements necessary for a DTPA claim. *See Skinner*, 2004 WL 1171201, at *2 (to recover under DTPA, plaintiff must prove that he "was a consumer under the DTPA," that the defendant "committed a false, misleading, or deceptive act under § 17.46(b) of the DTPA, breached an express or implied warranty, or engaged in an unconscionable action or course of action," and that "the act in question was a producing cause of damages"); *Alonso*, 356 F. Supp. 2d at 762 (same); *cf. Herzog*, WL 31556352, at *3 (E.D. La. Nov. 15, 2002) (finding that plaintiffs stated "facially valid" claims against the two defendants that they sought to add to the suit). Moreover, Defendants do not argue that Plaintiff has failed to properly allege a DTPA claim; instead, they argue that he has not met any of the exceptions under § 82.003. *See*

11

*Skinner*, 2004 WL 1171201, at *2 n.3. Based on *Alonso* and *Skinner*, the Court concludes that, § 82.003 notwithstanding, Plaintiff has stated a facially valid DTPA claim against UTP.[6] *But see Brewer v. Porsche Cars North America, Inc.*, 2005 WL 292417, *2 (N.D. Tex. 2005) (remanding on basis of DTPA claim because plaintiff's pleading of that claim satisfied one of the exceptions to a seller's immunity under § 82.003); *Casas v. The Tire Corral, Inc.*, No. M-04-123, 2005 WL 6773889, at *5 (S.D. Tex. Mar. 31, 2005) (Crane, J.) (disagreeing with *Alonso*'s analysis).

*Gonzalez v. Reed-Joseph Int'l Co.*, No. 4:11-CV-01094, 2013 WL 1578475, at *4 (S.D. Tex. Apr. 11, 2013) (Ellison, J.), held that a court cannot consider an otherwise valid claim under Texas law until it first determines that a § 82.003(a) exception applies. *Id.* at *4. Because *Gonzalez* involved common-law claims and reviewed other court decisions involving claims "such as negligence or breach of implied warranty," *id.*, it is not necessarily in tension with *Alonso*, which involved a DTPA statutory claim. The § 82.003(a) exceptions apply to "products liability actions." *Lopez v. Huron*, No. 04-15-00327-CV, 2016 WL 416132, at *2 (Tex. App.—San Antonio Feb. 3, 2016). A "products liability action" is defined as "any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories." TEX. CIV. PRAC. & REM. CODE ANN. § 82.001. Claims under the DTPA are not expressly mentioned, and it has been observed that the "definition does not appear to include most DTPA claims, which are based on misrepresentation

---

[6] Plaintiffs' bare-bones pleadings (both with respect to the DTPA claim and the common-law fraud claim) would likely not survive a motion to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks and citation omitted)). As noted above, however, the test for determining a valid claim under *Hensgens* is more lenient than the 12(b)(6) standard.

12

or unconscionability." Richard M. Alderman, THE LAWYER'S GUIDE TO THE TEXAS DECEPTIVE TRADE PRACTICES ACT § 8.07 & n.218 (2d ed. Dec. 2012); *see also Daniel v. Richardson*, No. 01-06-00242-CV, 2009 WL 1025765, at *3 (Tex. App.—Houston [1st Dist.] Apr. 16, 2009, no pet.) (Hanks, J.) (holding that plaintiff's suit for misrepresentation under the DTPA, which sought economic and business-loss damages, did not constitute a "products liability action"). At the very least, this suggests that § 82.003 need not function as a "gatekeeper," *Gonzalez*, 2013 WL 1578475, at *4, in assessing the facial validity of DTPA claims. *Cf. Cooper v. Zimmer Holdings, Inc.*, 320 F. Supp. 2d 1154, 1163–64 (D. Kan. 2004) (remanding on basis of deceptive trade practice claim despite broad statutory definition of product liability claim under Kansas law). For that reason, § 82.003 does not constitute a "significant legal obstacle" under the *Hensgens* analysis. *See Gallegos*, 2009 WL 4730570, at *4.

### iii. Plaintiff's common-law fraud claim is facially valid.

Under Texas law, a fraud claim requires a plaintiff to show that:

> (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990), and *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)). In asserting common-law fraud against UTP, Plaintiff states:

> 22. Plaintiff further shows that UTP made material false representations to Plaintiff with the knowledge of their falsity or with reckless disregard of the truth with the intention that such representations be acted upon by Plaintiff, and that Plaintiff relied on these representations to his detriment.
>
> 23. Plaintiff would further show that UTP and/or Endurance concealed or failed to disclose material facts within the knowledge of Defendants, that Defendants knew

> that Plaintiff did not have knowledge of the same and did not have equal opportunity to discover the truth, and that Defendants intended to induce Plaintiff to enter into the transaction made the basis of this suit by such concealment or failure to disclose.
>
> 24. As a proximate result of such fraud, Plaintiff sustained the damages described more fully herein below.

(Am. Compl. ¶¶ 22–24.)

Even if Plaintiff were required to assert a cause of action that, on its face, satisfies § 82.003, he has done so via his common-law fraud claim. Section 82.003(a)(5) provides that a non-manufacturing seller may be held liable if:

> (A) the seller made an express factual representation about an aspect of the product;
>
> (B) the representation was incorrect;
>
> (C) the claimant relied on the representation in obtaining or using the product; and
>
> (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003(a)(5). Fairly read, Plaintiff's common-law fraud claim falls within this exception. *See Casas*, 2005 WL 6773889, at *3 ("Plaintiffs pleadings need not specifically cite to any of the seven exceptions to non-liability, so long as the Plaintiffs fairly state a claim that falls within any one or more of the exceptions, remand is appropriate.").

\*   \*   \*

Because Plaintiff has asserted at least one valid claim against UTP, this consideration weighs in favor of permitting UTP's joinder and remanding the case to state court.

### c. The timing of Plaintiff's amendment does not show a purpose to defeat jurisdiction.

When a plaintiff moves to amend to add a nondiverse defendant shortly after removal, some courts view that as evidence of a purpose to defeat federal diversity jurisdiction, particularly if discovery has not yet taken place at the time of the proposed amendment. *Gallegos*, 2009 WL 4730570, at *4; *see also WNWSR, LLC v. Chesapeake Energy Corp.*, No. CV 4:15-1860, 2015 WL 7357840, at *3 n.4 (S.D. Tex. Nov. 19, 2015) (Atlas, J.) ("This facet of the analysis on the first *Hensgens* factor overlaps with the second *Hensgens* factor because both concern the timing of events in the action. The first factor focuses, however, on whether the *sequence* of events gives rise to an inference regarding Plaintiff's purpose in making the Motion. In contrast, the second factor examines the *length* of time between relevant events to determine whether Plaintiff's Motion is dilatory.").

Plaintiff filed his amended complaint a month and a half after removal—a relatively short period of time. However, Plaintiff did not seek remand after joining UTP as a defendant, nor did he raise the jurisdictional issue regarding UTP's Texas citizenship now before the Court. Instead, Plaintiff has continued to litigate this case in federal court for over a year. This case thus stands in contrast to situations where a plaintiff seeks to join a nondiverse defendant *and* have the case remanded with near simultaneity. *See Gallegos*, 2009 WL 4730570, at *4 (plaintiff "filed the motion for leave to amend *and the motion to remand* less than a month after removal, providing further evidence that the amendment was to defeat federal jurisdiction" (emphasis added)). Moreover, while no discovery occurred between removal and Plaintiff's filing of the amended complaint, Endurance did file a motion to dismiss during that period. Plaintiff's amended complaint contained several substantive revisions that mooted the motion to dismiss. This suggests that the amended complaint was designed to avoid a dismissal under Rule 12(b)(6)

rather than to destroy federal jurisdiction. This consideration favors finding that Plaintiff's primary purpose in amending was not to destroy federal jurisdiction.

Overall, it does not appear that Plaintiff's primary purpose in seeking to join UTP was to defeat diversity jurisdiction. This factor therefore weighs in favor of UTP's joinder and remand to state court.

### 2. Factor 2: Plaintiff was not dilatory in seeking to join UTP as a defendant.

In addressing the second *Hensgens* factor, courts look to (i) the amount of time between the original state court action and the request to amend, and the time between removal and the request; and (ii) the stage of the proceedings at the time of the amendment. *Lowe*, 2010 WL 3359525, at *2.

Here, Plaintiff filed his amended complaint less than three months after the state court suit was filed and approximately a month and a half after the notice of removal. Courts have refused to find comparable timeframes dilatory. *See Lowe*, 2010 WL 3359525, at *2 ("The lapses of time between the filing of suit in state court and [p]laintiff's request to amend—six months— and between [d]efendants' removal and the request—30 days—are not so great as to require a finding they are dilatory."); *McNeel v. Kemper Cas. Ins. Co.*, No. 3:04-CV-0734, 2004 WL 1635757, at *3 (N.D. Tex. July 21, 2004) (amendment sought five months after petition and six weeks after removal not dilatory); *Vincent v. E. Haven Ltd. P'ship*, No. 02-2904, 2002 WL 31654955, at *3 (E.D. La. Nov. 20, 2002) (amendment five months after petition not dilatory). Moreover, at the time Plaintiff filed the amended complaint, "no pretrial or trial dates ha[d] been scheduled and no significant activity beyond the pleadings ha[d] occurred." *Gallegos*, 2009 WL 4730570, at *4. This factor therefore weighs in favor of permitting UTP's joinder and remanding to state court.

### 3. Factor 3: Plaintiff would be injured if the amendment were not allowed.

Courts analyzing the third *Hensgens* factor look to (i) whether the already named diverse defendant would be unable to satisfy a future judgment, and (ii) whether the possibility of a separate state court proceeding weighs against denying the proposed amendment because of the inefficiency of parallel proceedings or because such proceedings would place a financial burden on the plaintiff. *Gallegos*, 2009 WL 4730570, at *5.

There is no indication that Endurance would be unable to satisfy a judgment in this case. However, while Plaintiff could sue UTP separately in state court, that would result in parallel judicial proceedings that would increase costs, lead to judicial inefficiency, and may produce conflicting results. This weighs significantly in favor of remand. *See Hensgens*, 833 F.2d at 1182 (highlighting "the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources" as the main interest to balance against a defendant's interest in retaining the federal forum).

### 4. Factor 4: There are no additional equitable considerations.

The fourth *Hensgens* factor requires courts to analyze other equitable factors. Although equitable factors include whether granting leave to amend would deprive a defendant of a properly invoked federal forum, *see, e.g., Smith v. Robin Am., Inc.*, No. H–08–3565, 2009 WL 2485589, at *6 (S.D. Tex. Aug. 7, 2009) (Harmon, J.), and whether denying leave to amend would result in parallel state court proceedings, *see Tomlinson*, 2006 WL 1331541, at *6, these factors are likely to be present whenever a plaintiff in a removed case seeks to add a nondiverse defendant. Those factors have already been analyzed in considering the first three *Hensgens* factors. Because neither party points to additional equitable factors beyond these considerations, the fourth *Hensgens* factor is neutral.

## CONCLUSION

Three of the four *Hensgens* factors weigh in favor of allowing Plaintiff to join UTP, and the fourth factor is neutral. The Court therefore **RECOMMENDS** that Defendants' joint motion to dismiss be **DENIED**. Because UTP's Texas citizenship destroys diversity jurisdiction, the Court **RECOMMENDS** that this case be **REMANDED** to the 268th Judicial District Court of Fort Bend County, Texas.

The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Dated: July 15, 2016

*/s/ Dena Palermo*
**DENA HANOVICE PALERMO**
**UNITED STATES MAGISTRATE JUDGE**